**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF MISSOURI**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| RACHEL AUMICK | ) | |
| *Individually and on behalf of the Heirs of* | ) | |
| *SHANE AUMICK, deceased,* | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 21-03072-CV-S-BP |
| | ) | |
| KALEB BERKSHIRE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER ON MOTIONS TO DISMISS

Pending are four Motions to Dismiss filed by various Defendants. (Docs. 8, 10, 12, 17.) The motions are **GRANTED IN PART** and **DENIED IN PART** as set out in greater detail in this Order.

## I.  BACKGROUND

This case involves a fatal encounter between Plaintiff's decedent Shane Aumick ("Shane") and Defendant Kaleb Berkshire, who was a police officer for the City of Ava, Missouri.  At all relevant points during the encounter, Berkshire was wearing his body camera, which was turned on.  Finding that the body camera footage was "necessarily embraced by the pleadings," *see Waters v. Madson,* 921 F.3d 725, 732 n.2 (8th Cir. 2019), the Court ordered Plaintiff to put the footage into the Record, (Doc. 38), and she complied.  (Doc. 39.)  For purposes of this order, Court will accept the facts alleged in the Complaint as true, but will also supplement its factual discussion with information from the body camera video.[1]

---

[1] The body camera video is timestamped; the Court will cite the video as "bodycam footage," and refer to various points in the footage based on the timestamp.

On April 4, 2020, Berkshire responded to a domestic call at the home of Shane Aumick and his family.  (Doc. 1, ¶¶ 10, 20.)  Berkshire was informed by Shane's mother that Shane was inside the residence with a knife, and was intoxicated and behaving strangely.  (*Id*. at ¶¶ 21–22.)  Shane then exited the residence holding a knife and talking incoherently about how people were trying to kill him.  (*Id*. at ¶ 23.)  Berkshire managed to disarm Shane, but Shane stepped back inside the residence.  (*Id*. at ¶¶ 24–25.)  Berkshire unholstered his firearm and told Shane to leave the residence with his hands up; eventually, Shane complied and Berkshire handcuffed him.  (*Id*. at ¶¶ 25–31; bodycam footage, at 06:14:27.)  Berkshire then directed Shane to sit on the front steps of the house.  (Bodycam footage, at 06:15:32.)  Noting that Shane's hand was bleeding, Berkshire called an ambulance.  (Doc. 1, ¶¶ 33, 35.)  Shane continued to speak loudly and mostly incoherently.  (*See, e.g.,* bodycam footage, at 06:16:12; 06:17:47)

While waiting for the ambulance to arrive, Berkshire searched the residence and conversed with Shane's relatives, who indicated that they did not want to press charges.  (Doc. 1, ¶¶ 36–37; bodycam footage at 06:17:27.)  Berkshire also asked Shane's mother what Shane was "on" that might explain his behavior; she indicated that, as far as she was aware, Shane had not consumed any intoxicating substance other than alcohol.  (Bodycam footage at 06:17:51.)  Berkshire then asked Shane whether he was on drugs, to which Shane replied, "fuck no."  (Bodycam footage at 06:18:53.)  At that point, Shane was still sitting on the front steps.  (*Id*.)

Between timestamps 06:20:00 and 06:21:00 of the bodycam footage, Shane became increasingly agitated.  At approximately 06:21:20, Shane threatened to "kill this neighborhood."  Berkshire then repositioned Shane so that he was lying face down on the ground, with his hands cuffed behind his back, and attempted to search his pockets.  (Doc. 1, ¶¶ 48–49; bodycam footage,

at 06:21:46.)  Shane struggled and continued to yell incoherently, and Berkshire knelt on Shane's back to restrain him.  (Doc. 1, ¶¶ 50, 54; bodycam footage, at 06:21:55.)[2]

About a minute later, Defendant Stephen Wood,[3] who is an EMT,[4] arrived on the scene in an ambulance.  (Doc. 1, ¶ 14; bodycam footage, at 06:22:36.)  Berkshire remarked to Wood that Shane was "pretty . . . I mean, he's fucking gone.  He's threatening to kill everybody.  He's supposedly drunk right now . . . ."  (Bodycam footage, at 06:22:36–06:22:40.)  While Berkshire was talking to Wood, Shane continued yelling and telling Berkshire to get off his back; Berkshire replied that he would let Shane up if he stopped yelling.  (Bodycam footage, at 06:23:14.)  Shane started kicking Berkshire, leading Berkshire to restrain him more forcefully.  (Bodycam footage, at 06:23:34.)  Catching sight of Wood, Shane said "please help me sir."  (Bodycam footage, at 06:23:55.)   Shane continued struggling, and at timestamp 06:24:24, muttered something indiscernible, which the Complaint interprets as an indication that Shane was struggling to breathe.  (Doc. 1, ¶ 59.)  Wood did not respond to Shane, and instead, knelt on the ground and held down Shane's legs to stop him from kicking Berkshire.  (Bodycam footage, at 06:24:37.)  Observing that

---

[2] According to the Complaint, it is common knowledge among law enforcement personnel and medical professionals that kneeling on an arrestee's back while the arrestee is prone can cause asphyxiation.  (*Id*. at ¶¶ 84–88.)

[3] The Complaint incorrectly spells Wood's name as "Steve Woods."  Wood has filed a motion to correct the spelling in the case caption and further filings.  (Doc. 16.)  That motion is **GRANTED**.

[4] It is unclear from the Complaint and from the parties' briefing who exactly employs Wood.  The Complaint alleges that Wood was "acting in his capacity as an EMT serving City of Ava, Douglas County, Missouri, employed by Defendants Cox and/or Ava/Douglas County Emergency Management EMT-B South-West and acting under the color of State law."  (Doc. 1, ¶ 14.)  But in her response to Wood's Motion to Dismiss, Plaintiff suggests that Wood is *not* a government employee and has no employment relationship with Douglas County or any other government entity. (Doc. 22, p. 6.)  As discussed below, the Court finds that Wood's employment status is irrelevant to the issues before the Court on his Motion to Dismiss.

Shane was bleeding, Wood remarked to Berkshire that Shane's injuries looked like "small []
wounds." (Bodycam footage, at 06:24:48.)

Berkshire grew frustrated with Shane's kicking and yelling and told Shane that if he kept
struggling, Berkshire would tase him. (Bodycam footage, at 06:25:01.) Shane continued yelling
and struggling, albeit at a reduced volume. (*E.g.,* bodycam footage, at 06:25:43.) At timestamp
06:26:44 of the bodycam footage, Shane repeatedly asked Berkshire to "get off me," to which
Berkshire replied "No, you keep kicking. You're kicking an officer and a paramedic." (Bodycam
footage, at 06:26:53.) Shane then fell silent. (*Id*.)

After about a minute of silence—at timestamp 06:28:03—Berkshire asked Shane "Are you
gonna be calm now?" Shane did not respond. Berkshire continued kneeling on Shane's back, and
Wood continued restraining his legs, for the next several minutes. At timestamp 06:28:47, Shane's
stepfather came over to Berkshire and had a brief conversation with Berkshire about what had
occurred that evening and whether Shane had acted violently in the past. Shortly thereafter—at
approximately 06:29:55—Wood asked Berkshire whether Shane was still breathing. Berkshire
replied "Well, I think he is." (Bodycam footage, at 06:30:00.) Berkshire then repositioned himself
to check, and a few seconds later, remarked "shit"—presumably because he discovered that Shane
had stopped breathing. (Bodycam footage, at 06:30:05.) For the next minute, Berkshire attempted
to elicit a response from Shane by telling him to "wake up" and "look at me." (*E.g.,* bodycam
footage, at 06:30:10.) At 06:30:25, Berkshire checked Shane's pulse, and indicated that he did not
feel any. Wood checked too, and joined Berkshire in telling Shane to "wake up." (Bodycam
footage, at 06:30:35.)

Wood subsequently returned to his ambulance to get medical equipment to test Shane's vital functions. (Bodycam footage, at 06:31:00.) The equipment indicated that Shane needed resuscitation; for the next several minutes, Berkshire and Wood struggled to remove Shane's clothes and handcuffs, and began attempting chest compressions and other life-saving medical procedures. (Bodycam footage, at 06:31:10–06:35:31.) These were apparently ineffective, because approximately 30 minutes later, a coroner arrived on the scene and declared Shane deceased. (Doc. 1, ¶ 70.)

Plaintiff Rachel Aumick, who was Shane's wife and the mother of his child, (*id.* at ¶ 1), brought this case on March 17, 2021. The Defendants named in the Complaint are the City of Ava, Missouri Police Department ("Ava PD"), the Ava/Douglas County Emergency Management ("Ava/Douglas EMT"), the Lester E. Cox Medical Centers ("Cox"), and Douglas County, (collectively, the "Institutional Defendants"), as well as Berkshire and Wood in their individual and official capacities.[5] The Complaint advances three legal theories against the Defendants:

- Count I, brought under 42 U.S.C. § 1983, asserts that Defendants Berkshire and Wood violated Shane's civil rights in violation of the Fourth Amendment;

- Count II, also brought under § 1983, asserts that the Institutional Defendants violated Shane's civil rights by failing to implement appropriate policies, customs, and practices, and by negligently retaining and failing to train or supervise Berkshire and Wood; and

- Count III, brought under Missouri's wrongful death statute, asserts that all Defendants are liable for Shane's death under a negligence theory.

---

[5] Defendants Douglas County and the Ava/Douglas EMT have filed a motion to dismiss with respect only to Plaintiff's request for punitive damages. (Doc. 17.) After this motion was filed, the parties jointly stipulated to the dismissal of these Defendants without prejudice, (Doc. 40), and Plaintiff's claims against them were dismissed on June 24. (Doc. 49.) Because these Defendants are no longer part of the case, their motion to dismiss, (Doc. 17), is **DENIED WITHOUT PREJUDICE AS MOOT**.

The Complaint seeks compensatory and punitive damages. Various groups of Defendants have filed motions to dismiss some or all of these claims. Plaintiff opposes the motions. The Court resolves these issues below.

## II. DISCUSSION

Defendants bring their motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). Rule 12(b)(6) entitles a party to dismissal if the opposing party has failed to state a claim upon which relief can be granted. When considering a motion under Rule 12(b)(6), the Court "must accept as true all of the complaint's factual allegations and view them in the light most favorable to the Plaintiff." *Stodghill v. Wellston School Dist.*, 512 F.3d 472, 476 (8th Cir. 2008).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. . . . The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations and citations omitted). A claim is facially plausible if it allows the reasonable inference that the defendant is liable for the conduct alleged. *E.g.*, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Horras v. American Capital Strategies, Ltd.*, 729 F.3d 798, 801 (8th Cir. 2013). With these principles in mind, the Court will address each Motion to Dismiss in turn.

### 1. Defendants Ava PD's and Berkshire's Motion to Dismiss

The Complaint asserts that Berkshire violated Shane's civil rights by using excessive force against him, that the Ava PD's unconstitutional policy, custom, or practice contributed to Berkshire's action, and that both Berkshire and the Ava PD are liable under state law for Shane's

wrongful death.  The Ava PD and Berkshire raise three grounds for dismissing certain portions of Plaintiff's Complaint, (*see* Doc. 8); the Court will address each argument in turn.

   a.  Status of the Ava PD

Defendants contend that Plaintiff cannot sue the Ava PD under § 1983 because it is simply a subdivision of the City of Ava, not a separate entity.  (Doc. 8, pp. 3–4); *see also Ketchum v. West Memphis*, 974 F.2d 81, 82 (8th Cir. 1992).  Plaintiff does not contest this proposition, but points out that she repeatedly refers to the City of Ava as a Defendant in the Complaint, and directs many of her allegations at the City of Ava.  (Doc. 23, pp. 2–3.)  She therefore requests the opportunity to amend the Complaint to substitute the correct Defendant, (*id*.), to which Defendants do not object.  (Doc. 24, p. 1.)  This request is granted, and Plaintiff may file an Amended Complaint substituting the City of Ava for the Ava PD.  Because Defendants proceed to make arguments assuming that the City of Ava is a Defendant, (*see, e.g.,* Doc. 8, p. 4), the Court will address those arguments in this Order despite the fact that the City of Ava has not yet been substituted.

   b.  Official Capacity Claims against Berkshire

Defendants next argue that Plaintiff cannot properly sue Berkshire in his official capacity, because "[a] suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity," and since Berkshire was an employee of the City of Ava, Plaintiff's claims against him in his official capacity are "redundant of the claim against the City."  *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010); (Doc. 8, p. 4.)  Plaintiff responds that "[i]f both Defendant Berkshire and his employer are seeking dismissal, then it cannot be argued that claims against a government officer in his official capacity

are functionally equivalent to a suit against the employing governmental entity when it is undetermined how the lawsuit will proceed based upon the pending motion." (Doc. 23, p. 3.)

The Court agrees with Defendants. The Eighth Circuit has long held that dismissal of official capacity claims against a government employee is appropriate where the plaintiff raises the same claims against the government employer. *See, e.g., Artis v. Francis Howell North Band Booster Ass'n*, 161 F.3d 1178, 1182 (8th Cir. 1998). Because the City of Ava—Berkshire's employer—will be substituted as a Defendant in this case, the claims against Berkshire in his official capacity are redundant, and hence, must be dismissed.

### c. Wrongful Death Claim Against City of Ava

Defendants assert that Plaintiff's wrongful death claim under Missouri law against the City of Ava is barred by sovereign immunity. (Doc. 8, p. 4.) Plaintiff contends that an exception to sovereign immunity exists when the defendant government entity has insurance to cover liability for the negligent conduct of its employees, (Doc. 23, pp. 3–4)—but, as Defendants point out, the Complaint does not assert that the City of Ava has such insurance. (Doc. 24, p. 2.) Because "sovereign immunity is the rule, not the exception," it is "part of the plaintiff's *prima facie* case," and thus, Plaintiff was required to plead the existence of an exception to sovereign immunity in the Complaint. *Newsome v. Kansas City*, 520 S.W.3d 769, 775–76 (Mo. 2017) (en banc) (citation omitted). Plaintiff is already required to amend the Complaint to substitute the City of Ava, so the Court will permit her to include allegations that the City of Ava has insurance that triggers the insurance exception to sovereign immunity if she discovers a factual basis for such allegations.[6]

---

[6] The Court notes that Plaintiff has received initial disclosures under FED. R. CIV. P. 26, which should have included information on Defendants' relevant insurance policies, if there are any. (Doc. 29.)

## 2. Defendant Wood's Motion to Dismiss

Count I of the Complaint asserts that Wood violated Shane's civil rights by (1) exhibiting deliberate indifference to his serious medical needs and (2) failing to intervene in Berkshire's asphyxiating restraint of Shane. (Doc. 1, ¶¶ 96, 98.) Wood has filed a motion to dismiss with respect to both of these theories. (Doc. 13.)

Initially, Wood argues that he is entitled to qualified immunity with respect to Count I. (Doc. 13, p. 5.) A defendant in a § 1983 action is entitled to qualified immunity unless "(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of deprivation." *Stark v. Lee Cty.*, 993 F.3d 622, 625 (8th Cir. 2021). The Court may "consider these two questions in any order." *Walton v. Dawson*, 752 F.3d 1109, 1116 (8th Cir. 2014). Plaintiff contends that Wood cannot assert qualified immunity because he is not a government employee; to support this contention, she relies on Defendant Douglas County's Answer denying that Wood is a County employee. (Doc. 22, p. 6; *see also* Doc. 15, ¶ 14.)

The Court need not decide whether Wood is entitled to qualified immunity, because it finds that Plaintiff has not stated a claim against him under either of the legal theories she advances. Thus, if Wood can assert qualified immunity, the facts do not "demonstrate the deprivation of a constitutional or statutory right," *Stark*, 993 F.3d at 625; and if he cannot, Plaintiff has failed to "state a claim to relief that is plausible on its face." *Ashcroft*, 556 U.S. at 678. The Court discusses each of Plaintiff's theories in turn.

a. <u>Deliberate Indifference to a Serious Medical Need</u>

A medical officer acting under the color of state law is liable for failing to treat a pretrial detainee if the detainee "suffered an objectively serious medical need" and the officer "had actual knowledge of those needs but deliberately disregarded them"; "[a] showing of negligence is not sufficient to meet this burden." *Carpenter v. Gage*, 686 F.3d 644, 650 (8th Cir. 2012). This test includes both an objective and a subjective component. The objective component requires that there be "an excessive risk to [the plaintiff's] health or safety," which was "known or obvious" to the defendant "from [the defendant's] perspective at the time in question, not with hindsight's perfect vision." *Jackson v. Everett*, 140 F.3d 1149, 1152 (8th Cir. 1998). The subjective component requires that the defendant acted under "a mental state akin to criminal recklessness," which can be "inferred . . . from facts that demonstrate that a medical need was obvious and that the [defendant's] response was obviously inadequate." *Barton v. Taber*, 820 F.3d 958, 965 (8th Cir. 2016) (cleaned up).

Wood argues that Plaintiff has not adequately alleged either prong of this test. He points out that the only "serious medical needs" discussed in the Complaint are Shane's intoxication and eventual asphyxiation; but because there is no connection between the intoxication and Shane's death, asphyxiation is the only relevant medical need. (Doc. 13, p. 3.) And Wood argues that, based on the facts alleged in the Complaint, Shane's asphyxiation was not "obvious," and that as soon as Wood acquired "actual knowledge" of Shane's condition, he took action to try to resuscitate him. (*Id*.) Plaintiff responds that, according to the Complaint, the type of restraint Berkshire used on Shane carries a high risk of asphyxiation; she contends that this should have put Wood on notice that Shane was at risk, and that Wood's failure to "perform any medical

assessment or render any medical aid" to Shane constituted deliberate indifference. (Doc. 22, p. 5.)

The Court agrees with Wood. When Wood arrived on the scene, at approximately timestamp 06:22:36, Berkshire was kneeling on Shane's back, but Shane was still yelling loudly and struggling with Berkshire. (Bodycam footage, at 06:22:36–06:22:40.) Berkshire informed Wood that Shane was drunk. (*Id*.) Wood helped Berkshire restrain Shane while he continued struggling and yelling, mostly inarticulately, until timestamp 06:26:44. At that point, Berkshire told Shane that he was "kicking an officer and a paramedic," and warned him to stop resisting. (Bodycam footage, at 06:26:53.) Shane was then silent for approximately three minutes—from 06:26:53 to 06:29:55—at which point Wood asked whether Shane was still breathing. Once Berkshire indicated that Shane was not breathing, Wood worked with Berkshire to revive Shane, albeit unsuccessfully.

Given this sequence of events, the Court finds that Shane's "objective medical need"— namely, his asphyxiation—was not clear and obvious; Wood might reasonably have interpreted the cessation of his yelling and struggling as a decision to comply with Berkshire's instructions, rather than a medical emergency. Even if, as Plaintiff suggests, Shane indicated that he was struggling to breathe and asked Wood for help, Wood might reasonably have interpreted Shane's vigorous movement and vocalizing as indicating that Shane could breathe adequately. Moreover, there is nothing to indicate that Wood acted with a "mental state akin to criminal recklessness." At worst, Wood was negligent in failing to notice, for three minutes, that Shane was struggling to breathe. And mere negligence is not sufficient to maintain a deliberate indifference claim. This conclusion comports with the applicable Eighth Circuit precedent on when a defendant is liable

for failing to assist a detainee who is struggling to breathe. *See, e.g., Krout v. Goemmer*, 583 F.3d 557, 570 (8th Cir. 2009) (officer who ignored inmate's shallow breathing for thirty minutes was not deliberately indifferent); *Ruark v. Drury*, 21 F.3d 213, 216–17 (8th Cir. 1994) (officer who ignored an inmate breathing with difficulty for fifteen minutes was not deliberately indifferent). For these reasons, the Court finds that Plaintiff has not stated a deliberate indifference claim against Wood.

b. Failure to Intervene

The Complaint also avers that Wood was liable because he failed to intervene to prevent Berkshire from kneeling on Shane's back. (Doc. 1, ¶ 98.) The failure-to-intervene theory is based on the notion that "'one who is given the badge of authority *as a police officer* may not ignore the duty imposed by his office' by failing to act to prevent the use of excessive force." *Nance v. Sammis*, 586 F.3d 604, 611–12 (8th Cir. 2009) (quoting *Putman v. Gerloff*, 639 F.2d 415, 423 (8th Cir. 1981)) (emphasis added).

Thus, the duty to intervene—the breach of which gives rise to failure-to-intervene claims— attaches to police officers. *Krout v. Goemmer*, 583 F.3d 557, 565 (8th Cir. 2009) (discussing the "duty *of a police officer* to intervene to prevent the excessive use of force—where the officer is aware of the abuse and the duration of the episode is sufficient to permit an inference of tacit collaboration") (emphasis added). The duty does not attach to *every* government actor[7]—and this makes sense, because among the many varieties of government employees, police officers are in a unique position to gauge whether another officer's use of force is "excessive." Indeed, as Wood

---

[7] This assumes, of course, that Wood is a government employee; if he is not, the argument for finding him liable for failing to stop Berkshire is even weaker.

points out, he is "a paramedic, [] trained in rendering emergency medical services and not in the appropriate use of force to make an arrest." (Doc. 13, p. 9.) And Plaintiff has cited no cases suggesting that the duty to intervene extends to non-law enforcement personnel. Therefore, the Court concludes that as a matter of law, Wood did not have a duty to intervene against Berkshire, and that the Complaint does not state a failure-to-intervene claim against him.

For these reasons, the Court finds that Plaintiff has not stated a claim against Wood under either her deliberate indifference theory or her failure-to-intervene theory. In her opposition to Wood's motion to dismiss, Plaintiff requests the opportunity to amend her Complaint should the Court find her allegations inadequate. However, the problem with Plaintiff's claims against Wood is not that she has failed to properly plead them; the problem is that the facts, as set out in detail in the Complaint and confirmed by the bodycam footage, do not add up to a viable legal claim under these theories. Therefore, Wood's Motion to Dismiss, (Doc. 12), is **GRANTED** with respect to Count I.

### 3. Defendant Cox's Motion to Dismiss

Count II alleges that Cox and the other Institutional Defendants maintained policies, customs, and/or practices which resulted in the deprivation of Shane's constitutional rights. (Doc. 1, ¶ 130.) Cox argues that the Complaint fails to state a claim under this theory, because Plaintiff fails to allege sufficient details to suggest that Cox maintained a policy, custom, or practice that contributed to any unconstitutional conduct by Wood. (Doc. 11, pp. 4–5.)

The Court finds that the Complaint fails to state a claim against Cox for an even more basic reason. A corporation acting under color of law[8] is not liable for the actions of its employees under a traditional *respondeat superior* theory of vicarious liability; instead, such a corporation is liable only for its policies, customs, and official actions. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). A plaintiff advancing this theory must "include in her complaint [allegations] from which an inference could be drawn" that the defendant "had a policy or custom" that contributed to the constitutional deprivation she suffered. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004).

Here, the only connection between Cox and any constitutional deprivation Shane suffered is Wood. And the Court has already held that Plaintiff has failed to advance a viable legal theory against Wood. Because Wood did not inflict a constitutional injury against Plaintiff, by extension, any constitutional injury he suffered did not derive from Cox's "policy or custom." *See, e.g., Brockinton v. City of Sherwood,* 503 F.3d 667, 674 (8th Cir. 2007) (where "no [employee] defendant is individually liable for an underlying substantive claim," the employer cannot be liable under *Monell*); *Keefe v. City of Minneapolis,* 785 F.3d 1216, 1227 (8th Cir. 2015) (the plaintiff's "*Monell* claim is dependent on his . . . [§] 1983 claims. Because summary judgment is proper on those claims, [the plaintiff's] *Monell* claim also fails.") Therefore, because Plaintiff has failed to state a claim against Wood under § 1983, she also has not stated a claim against Cox under *Monell*.

[8] Cox argues that the Complaint fails to allege sufficient factual matter to show that it acted under color of state law, and therefore cannot be liable under § 1983. (Doc. 11, pp. 2–3.) Because the Court finds that the Complaint fails to state a claim against Cox, it assumes without deciding that Cox is otherwise a viable § 1983 defendant.

Plaintiff once again requests that if the Court finds she has failed to state a claim, she be allowed to amend her Complaint to cure any deficiencies. (Doc. 21, p. 8, n.3.) However, as with Wood's Motion to Dismiss, the problem with Plaintiff's claim against Cox is legal rather than factual; additional facts about Cox will not make Plaintiff's claim viable. Therefore, Cox's Motion to Dismiss, (Doc. 10), is **GRANTED** and Count II is **DISMISSED** with respect to Cox.

## III.  CONCLUSION

In summary, for the foregoing reasons, the Court **ORDERS** as follows:

- Defendants Ava PD and Berkshire's Motion to Dismiss, (Doc. 8), is **GRANTED IN PART**.  Plaintiff may file an amended complaint substituting the City of Ava for the Ava PD, and adding allegations that the City of Ava has insurance for the negligent conduct of its employees.  The official capacity claims against Berkshire are **DISMISSED**.

- Defendant Wood's Motion to Dismiss, (Doc. 12), is **GRANTED** and Count I is **DISMISSED** with respect to Wood.  Wood's motion to correct the spelling of his name in the case caption, (Doc. 16), is **GRANTED**.

- Defendant Cox's Motion to Dismiss, (Doc. 10), is **GRANTED** and Count II is **DISMISSED** with respect to Cox.

- Defendants Douglas County and Ava/Douglas EMT's Partial Motion to Dismiss, (Doc. 17), is **DENIED WITHOUT PREJUDICE AS MOOT** in light of these Defendants' dismissal from the case.

Plaintiff is permitted to amend the Complaint as follows:

- Substitute the City of Ava for the Ava PD as a Defendant; and

- Allege that the City of Ava has insurance that triggers an exception to sovereign immunity if the factual basis for such an allegation exists.

Plaintiff shall file an Amended Complaint within fourteen days.  If Plaintiff wishes to amend the Complaint in any other way, she must first seek permission to do so.  Assuming Plaintiff amends her Complaint as directed, the following claims remain:

- Count I, with respect to Berkshire in his individual capacity;

- Count II, with respect to the City of Ava; and

- Count III, with respect to all Defendants who are still part of the case.

**IT IS SO ORDERED.**

/s/ Beth Phillips
BETH PHILLIPS, CHIEF JUDGE
Date: <u>July 12, 2021</u>          UNITED STATES DISTRICT COURT