| | | |
|---|---|---|
| **RACHEL AUMICK, Individually and** | ) | |
| **on behalf of the Heirs at Law of SHANE** | ) | |
| **AUMICK, deceased,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **V.** | ) | **Case No. 6:21-cv-03072-BP** |
| | ) | |
| **CITY OF AVA, MISSOURI,** | ) | **JURY TRIAL DEMANDED** |
| **OFC. KALEB BERKSHIRE,** | ) | |
| **LESTER E. COX MEDICAL CENTERS** | ) | |
| **d/b/a COXHEALTH CENTER AVA,** | ) | |
| **and STEPHEN WOOD,** | ) | |
| **Defendants.** | ) | |

## FIRST AMENDED COMPLAINT

COMES NOW Plaintiff Rachel Aumick, Individually and on behalf of the Heirs at Law of Shane Aumick, deceased, and for her First Amended Complaint against the Defendants who are sued in their individual and official capacities states the following:

## INTRODUCTION

1.      Plaintiff Rachel Aumick, Individually and on behalf of the Heirs at Law of Shane Aumick, deceased, seeks judgment against Defendants for violation of Mr. Aumick's rights under the Fourth and Fourteenth Amendments to the Constitution of the United States and 42 U.S.C. §§ 1983 and 1988; violation of his rights under the Missouri Constitution; and Missouri's negligence, negligent supervision, negligent training, negligent retention, and wrongful death laws. Plaintiff also seeks judgment against Defendant City of Ava, Missouri for implicitly or explicitly adopting and implementing policies, customs, or practices that included, among other things, allowing officers with no or inadequate training to assess the conditions, including right to be free from the use of excessive force; and for its unconstitutional policies, customs and/or practices. These policies, customs, or practices and/or failure to have the same reflected a deliberate indifference to Mr. Aumick.

## JURISDICTION AND VENUE

2.      This action is brought, in part, pursuant to 42 U.S.C. § 1983 for the deprivation of civil rights; jurisdiction is therefore appropriate under 28 U.S.C. §§ 1331 and 1343.

3.      This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

4.      The claims asserted herein arose in the Western District of Missouri, Douglas County, City of Ava and venue is therefore proper in this Court.

## PARTIES

5.      Plaintiff Rachel Aumick is and was at all times relevant herein the spouse of Shane Aumick. Plaintiff is therefore the appropriate party to bring this action on behalf of all members of the class for wrongful death pursuant to R.S.Mo. § 537.080.

6.      Defendant City of Ava, Missouri ("City of Ava") is a political subdivision of the State of Missouri and operates the Police Department, located in Ava, Douglas County, Missouri.

7.      City of Ava is the political subdivision of the State of Missouri that is responsible for the wrongful death of Mr. Aumick, which was caused by the intentional acts and/or failures to act of the duly appointed officers of the City of Ava, Missouri, who were acting by virtue of or under color of the office at the time, as well as the negligent acts and/or omissions of each and every other Defendant, who were employees and/or agents of said city, and were acting within their scope of employment.

8.      At all times relevant hereto, upon information and belief, Defendant Officer Kaleb Bershire was a citizen and resident of Douglas County, Missouri and was acting in his capacity as a Police Officer, employed by City of Ava, Douglas County, Missouri and acting under the color of State law at the time of Mr. Aumick's death. He is hereby sued in his

2

individual capacity.

9.      Defendant Lester E. Cox Medical Centers d/b/a CoxHealth Center Ava ("Cox") is a Missouri corporation authorized and organized pursuant to the laws of the State of Missouri.  At all relevant times, Defendant Cox was acting by and through its agents, servants and/or employees, some of which employees are emergency medical technicians and other health care providers.  As a result, Defendant Cox is vicariously liable for the actions of its agents, servants and/or employees.  At all times relevant, a hospital/patient relationship existed between Cox and Plaintiff's decedent, Mr. Aumick.

10.     At all times relevant hereto, upon information and belief, Defendant Stephen Wood was a citizen and resident of Douglas County, Missouri and was acting in his capacity as an EMT serving City of Ava, Douglas County, Missouri, employed by Defendant Cox. At all relevant times a patient relationship existed between Defendant Wood and Plaintiff. Defendant Wood, at all times mentioned, was the employee, agent, and servant of Defendant Cox, and was acting within the scope and authority of his employment, and her acts and omissions were the acts and omissions of Defendant Cox.

11.     City of Ava has established and/or delegated to Defendant employees of the Police Department the responsibility of establishing and implementing policies, practices, procedures and customs in providing the detention, medical care, medical screening, safety screenings and appropriate monitoring of individuals similarly situated as Mr. Aumick; and for implementing policies, practices, procedures, and/or customs for training other officers and emergency medical personnel in these matters.

12.     All negligent and/or intentional acts and/or omissions which caused the death of Mr. Aumick occurred while he was in the custody of the City of Ava police located in Ava, Douglas County, Missouri.

3

13.     All negligent and/or intentional acts and/or omissions which caused the death of Mr. Aumick occurred while he was detained by the City of Ava police located in Ava, Douglas County, Missouri.

14.     These causes of action arose under the 4th and 14th Amendments of the U.S. Constitution and 42 USC §§ 1983 and 1988, under the Constitution of the State of Missouri and under Missouri common law for negligence, negligent supervision, negligent training, negligent retention and wrongful death.

15.     Each of the intentional and/or negligent acts and/or omissions complained of herein which cause the death of Mr. Aumick occurred on or about April 4, 2020, the date of his death, while in the care, custody and control of Defendants.

**FACTS**

16.     On or about April 4, 2020, at approximately 6:14 A.M., Defendant Berkshire responded to a domestic call at 507 Pennington Avenue in Ava, Missouri.

17.     Upon arrival, Defendant Berkshire made contact with Mr. Aumick's mother and step-father outside of the residence.

18.     Defendant Berkshire was told that Mr. Aumick was inside the residence, intoxicated, possessed a knife and not in the right state of mind.

19.     At that time, Mr. Aumick exited the residence stating his belief that people were trying to kill him and he needed to protect himself.

20.     Defendant Berkshire instructed Mr. Aumick to put the knife down several times.

21.     Defendant Berkshire disarmed Mr. Aumick and the knife landed in the grass by the porch.

22.     Mr. Aumick then re-entered the residence.

4

23.     Defendant Berkshire removed his pistol and light instructing Mr. Aumick to exit the residence with his hands up.

24.     Defendant Berkshire once again instructed Mr. Aumick to come out of the residence slowly with his hands up and if he did not, Berkshire would have to enter the residence and shoot Mr. Aumick.

25.     Defendant Berkshire repeated his instruction several times until Mr. Aumick walked slowly toward the doorway with his hands raised and no weapon.

26.     Defendant Berkshire holstered his weapon and instructed Mr. Aumick to turn around and put his hands behind his back.

27.     Mr. Aumick complied and was handcuffed at this time.

28.     Defendant Berkshire sat Mr. Aumick on the front porch steps of the residence while Berkshire performed his search.

29.     While searching the residence, Defendant Berkshire radioed dispatch and inquired about a request for an ambulance.

30.     Mr. Aumick remained seated on the front porch steps complying with Defendant Berkshire's request.

31.     Defendant Berkshire asked Mr. Aumick where he was bleeding from and Mr. Aumick replied his hands.

32.     Defendant Berkshire directed Mr. Aumick to "stay put" while he questioned Mr. Aumick's mother and step-father.

33.     The Aumick family told Defendant Berkshire the did not want to press any charges against Mr. Aumick.

34.     Defendant Berkshire asked Mr. Aumick's mother what he is "on" to which she

replied he had only had vodka and she is aware of nothing else.

35. Defendant Berkshire again radioed dispatch to inform them he has the scene controlled and waiting on medical attention for Mr. Aumick's hands and his mother's dog bites.

36. Defendant Berkshire informed dispatch that Mr. Aumick's "really intoxicated."

37. Mr. Aumick continued to sit on the front steps handcuffed shouting incoherently.

38. Defendant Berkshire instructed Mr. Aumick to stop yelling telling Mr. Aumick there is nothing there.

39. Mr. Aumick continued having delusions, seeing things, grunting and yelling incoherently.

40. Defendant Berkshire moved his patrol car so that his lights were directly on Mr. Aumick who was still sitting on the front porch steps.

41. The patrol car's bright lights agitated Mr. Aumick, but he remained seated on the front porch steps.

42. Mr. Aumick continued his delusions talking about nieces and nephews, but Defendant Berkshire once again told him that no one else is there.

43. Defendant Berkshire again radioed dispatch to inquire about the ambulance.

44. Mr. Aumick continued to ramble on incoherently and was now lying on the front porch steps still handcuffed.

45. While laying sideways, Defendant Berkshire attempted to search Mr. Aumick's pants asking if he has anything.

46. Mr. Aumick was then moved and now laid down on his stomach on the ground,

still handcuffed, by the front porch steps.

47.     Defendant Berkshire requested Mr. Aumick cross his legs.

48.     While still on the ground on his stomach, Mr. Aumick continued to yell out while Defendant Berkshire demanded "Stop! Stop, you understand?...Stop, now!"

49.     Mr. Aumick pleaded, "Please!" "Have mercy!"

50.     Per the body-cam footage time-stamped 6:22:21, the shadow off the porch reflected Defendant Berkshire with one leg kneeling down on Mr. Aumick.

51.     At 6:22:37, the ambulance arrived and Defendant Berkshire stated, "He's pretty, I mean he's fucking gone."

52.     At 6:23:04, Defendant Berkshire told Defendant Wood that Mr. Aumick had said he was only drunk.

53.     At 6:23:13, Defendant Berkshire stated, "I'll get off your back when you stop."

54.     Mr. Aumick pleaded at 6:23:50, "Please help me sir."

55.     At 6:24:24, Mr. Aumick stated he was having trouble breathing and unable to respond.

56.     At 6:24:26, Mr. Aumick pleaded again, "help me."

57.     At 6:24:41, Defendant Wood held Mr. Aumick's legs down by his ankles while Defendant Berkshire was on Mr. Aumick's back.

58.     At 6:25:05, Defendant Berkshire threatened to use his taser on Mr. Aumick.

59.     Mr. Aumick can only be heard making grunting noises.

60.     At 6:26:52, Mr. Aumick pleaded again, "Get off me."

61.     In the next few minutes, Mr. Aumick became completely silent.

62.     At 6:29:50, Defendant Wood asked Defendant Berkshire if Mr. Aumick was still conscious.

63.     Defendant Berkshire responded, "yeah."

64.     Defendant Berkshire rolled Mr. Aumick over stating, "Well, I think he is."

65.     At 6:30:05, Defendant Berkshire said, "Shit."

66.     Defendants Berkshire and Wood began medical life-saving procedures until further emergency medical services arrived to take over the responsibility of Mr. Aumick.

67.     While on scene, Coroner Rick Miller arrived and declared Mr. Aumick deceased at 7:05 A.M. on April 4, 2020.

68.     Defendants knew of Mr. Aumick's need for immediate medical attention and continually disregarded his health and safety.

69.     Defendants were aware that Mr. Aumick had an objectively serious medical need as it was obvious based on his condition and Defendants' comments about his condition, but he was not provided medical care.

70.     Defendants individually and in concert with one another intentionally, willfully, maliciously, and while acting under the color of State law showed a deliberate indifference to Mr. Aumick's serious needs, including medical needs and intervention, in that they had actual knowledge of his intoxicated condition and did not provide any medical treatment or allow him contact with anyone who could provide proper and/or adequate medical treatment.

71.     Defendants individually and in concert with one another through the policies and procedures instituted by them fostered an environment which led to the deliberate indifference of Mr. Aumick's serious needs in contravention of his civil rights.

72.     Defendants City of Ava and Cox were negligent in their supervision of Defendant

8

Berkshire, Defendant Wood and the employees, officers, and/or paramedics therein.

73.     Each of the Defendants, individually and in concert with one another, acted under the color of State law in both his/her individual and official capacities to deprive Mr. Aumick of his rights secured to Mr. Aumick by the 4th and 14th Amendments to the Constitution of the United States and by 42 U.S.C. §1983.

74.     As a direct and proximate result of the intentional and/or negligent acts of all Defendants, Plaintiff suffered the loss of her husband and the father of her child.

75.     As a direct and proximate result of the actions of all Defendants described above and pursuant to Mo. Rev. Stat. 537.090, Plaintiff has damages as follows: damages that decedent Mr. Aumick suffered between and up to the time of his death, and for the recovery of which the decedent might have maintained an action had death not ensued; pecuniary loss suffered by reason of the death of Mr. Aumick; funeral expenses; and a reasonable value of the services, consortium, companionship, comfort, instruction, guidance, counsel, training, and the support of which Plaintiff has been deprived by reason of the death of Mr. Aumick.

76.     All of the aforementioned actions demonstrate that Defendants' actions were reckless and/or callously indifferent to Mr. Aumick's rights so as to justify consideration by the trier of fact of aggravating circumstances in determining the amount of damages to be allowed.

77.     Plaintiff is entitled to compensation for violations of Mr. Aumick's constitutional rights that all Defendants inflicted upon him, including but not limited to all damages allowable for wrongful death pursuant to R.S.Mo. § 537.080; pain and suffering before death; attorney's fees; and punitive damages.

## COUNT 1:
### Violation of Civil Rights Pursuant to Title 42 U.S.C. § 1983
### Against Defendant Berkshire

78.     Plaintiff hereby incorporates by reference the allegations made in each preceding paragraphs as if each were set forth herein.

79.     The Fourth Amendment prohibits the use of deadly force in non-deadly circumstances which do not pose an immediate threat of serious bodily injury and/or death.

80.     It is well known throughout the law enforcement and medical communities that holding a subject in a position of prone restraint for prolonged periods of time can be deadly.

81.     Compressing an arrestee in a prone position with weight on their back and/or abdomen restricts their ability to breathe and can result in asphyxiation.

82.     Deaths caused by this form of asphyxiation are often interchangeably referred to as deaths from positional, mechanical, or compression asphyxia, even if technical distinctions exist.

83.     The United States Department of Justice has warned law enforcement for decades about the dangers of prone restraint and as early as 1995: "The risk of positional asphyxia is compounded when an individual with predisposing factors becomes involved in a violent struggle with an officer or officers, particularly when physical restraint includes behind-the-back handcuffing combined with placing the subject in a stomach-down position." National Law Enforcement Technology Center, *Positional Asphyxia—Sudden Death* at *2 (June 1995).

84.     Due to the well-known risks associated with prone restraint, it has long been national

best practice that once a subject is controlled, it is imperative that they be moved from the prone position, and that their breathing be assessed.

85.     The conduct of Defendant Berkshire and identified in this count and described herein constituted excessive and deadly force in violation of the Fourth Amendment of the United States Constitution and clearly established law.

86.     At all relevant times, Defendant Berkshire was acting under color of state law, as an agent of City of Ava, and within the scope of his employment and authority as duly-certified law enforcement officer of the City of Ava.

87.     At all relevant times, Defendant Berkshire was acting in his capacity as a Police Officer and directly participated in violating Mr. Aumick's federal rights. Defendant Berkshire is therefore liable in both his individual and supervisory capacities.

88.     At all relevant times while Mr. Aumick was detained and handcuffed, Defendant Berkshire did not have a reasonable fear of imminent bodily harm when he kneeled on Mr. Aumick's body, nor did Defendant Berkshire have a reasonable belief that any other person was in danger of imminent bodily danger from Mr. Aumick.

89.     Every reasonable officer would have known that using force against a compliant, handcuffed individual who is not resisting arrest constitutes excessive force in violation of the Fourth Amendment.

90.     Defendant Berkshire's use of deadly force in applying direct pressure to and kneeling on Mr. Aumick, and more specifically his back, was objectively unreasonable and violated clearly established law.

11

91.     It was objectively unreasonable for Defendant Berkshire to maintain Mr. Aumick in a prone position without properly monitoring his breathing or pulse.

92.     It was a violation of Mr. Aumick's Fourth and Fourteenth Amendment rights for Defendant Berkshire not to render medical aid following Mr. Aumick's pleas and loss of consciousness, each of which demonstrated a serious medical need.

93.     As a result of Defendant Berkshire's unjustified, excessive, and illegal, and deadly use of force, Mr. Aumick experienced conscious pain and suffering and ultimately, died.

94.     Mr. Aumick's medical need was so obvious that even a layperson would easily recognize the need for medical attention, but he was not provided proper medical care to maintain his health.

95.     Mr. Aumick's serious medical need was apparent by his actions and by the fact that Defendant Berkshire acknowledged his condition, but he was not provided proper medical care to maintain his health.

96.     Despite Mr. Aumick's obvious medical condition, Defendant Berkshire failed to provide him medical care allowing him to die.

97.     A reasonable officer would have understood that failing to seek appropriate, properly adequate medical care for one who exhibited the signs of Mr. Aumick would violate his constitutional rights.

98.     Defendant Berkshire deliberately disregarded Mr. Aumick's objectively serious medical condition.

99.     Given Mr. Aumick's condition, a reasonable officer in Defendant Berkshire's position would have understood that failing to get him emergency medical care violated his

constitutional right.

100.    From the time Mr. Aumick was in custody, Defendant Berkshire was aware that he required medical attention.

101.    Defendant Berkshire knew that there was a substantial risk that Mr. Aumick was in a critical state and his need for medical attention was obvious.

102.    Defendant Berkshire failed to obtain appropriate, properly adequate medical care for Mr. Aumick or take any other reasonable measures to deal with Mr. Aumick's condition.

103.    In committing the acts complained of herein, Defendant Berkshire acted under color of State law to show deliberate indifference to a serious medical need and to the substantial risk of death by Mr. Aumick after having actual knowledge of such need for care, including medical care, and in deprivation of Mr. Aumick's rights under the Due Process Clause of the 14th Amendment of the United States Constitution.

104.    As a direct and proximate result of the violation of Mr. Aumick's constitutional rights by the Defendant Berkshire, Mr. Aumick suffered general and special damages as alleged in the Complaint and is herein entitled to relief under 42. U.S.C. § 1983.

105.    The conduct of the Defendant Berkshire was willful, malicious, oppressive, and reckless and are of such nature that punitive damages should be imposed in the amount commiserate with the wrongful acts alleged herein.

    WHEREFORE, Plaintiff prays this Court:

A.    Enter judgment in favor of Plaintiff and against Defendant Berkshire;

B.    Award Plaintiff compensatory damages and damages for aggravating circumstances against Defendant Berkshire.

C.    Award Plaintiff punitive damages;

D.    Award Plaintiff reasonable attorney's fees and costs pursuant to 42

U.S.C. § 1988 and any other applicable provisions of law; and

E.     Allow such other relief as the Court deems just and proper.

**COUNT 2:**
**Violation of Civil Rights Pursuant to Title 42 U.S.C. § 1983**
**(Failure to Implement Appropriate Policies, Customs, and**
**Practices and Failure to Train, Supervise and Retain)**
**Against Defendant City of Ava**

106.     Plaintiff hereby incorporates by reference the allegations made in each preceding paragraph as if each were set forth herein.

107.     From the time Mr. Aumick was in custody, Mr. Aumick's constitutional rights were deliberately disregarded and violated resulting in his death.

108.     Given Mr. Aumick's condition, a reasonable officer in Defendant Berkshire's position would have understood that using excessive force and failing to get him proper medical care violated his constitutional rights.

109.     Defendant City of Ava's policy, custom and/or practice resulted in deprivation of Mr. Shy's constitutional violations.

110.     Defendant City of Ava failed to properly train or modify its training to Defendant Berkshire and its other officers, including but not limited to, matters related to the reasonable and appropriate use of force during such arrests, and intervention in the excessive use of force by fellow officers.

111.     Effectuating an arrest, using force to effectuate an arrest, and intervening in the use of force is a usual and recurring situation with which Defendant City of Ava's law enforcement officers and other agents encounter on a regular basis.

112.     With deliberate indifference to the rights of citizens, Defendant City of Ava failed to provide adequate training to its officers and/or personnel for the use of prone restraint(s).

113.     Defendant City of Ava was aware that deprivation of the constitutional rights

of citizens was likely to result from its lack of training and the failure to modify its training.

114. As such, Defendant City of Ava was deliberately indifferent and exhibited reckless disregard with respect to the potential violation of constitutional rights.

115. The failure to train and/or to appropriately modify training constituted official Defendant City of Ava's policies, practices, or customs.

116. Defendant City of Ava's failure to train and/or to modify training was behind the acts and omissions Defendant Berkshire made toward Mr. Aumick.

117. Defendant City of Ava's further custom and/or practice to ignore clear signs of severe medical condition and not provide appropriate, properly adequate medical treatment deprived Mr. Aumick of his constitutional rights.

118. Alternatively, Defendant City of Ava's failure to have an adequate policy, custom and/or practice resulted in the violation of Mr. Aumick's constitutional rights. Defendant City of Ava developed and maintained policies, customs and practices exhibiting deliberate indifference to Mr. Aumick's constitutional rights.

119. Alternatively, Defendant \ City of Ava failed to have adequate policies, customs, and practices to protect an arrestee/detainee's constitutional rights.

120. Defendant City of Ava developed policies, customs, and practices violating Mr. Aumick's constitutional rights in failing to get him appropriate, properly adequate medical care when needed and provide for his safety.

121. Defendant City of Ava failed to train, supervise, and retain staff on the rights of an arrestee/detainee, thereby demonstrating a deliberate indifference to Mr. Aumick.

122. This failure to train amounts to a deliberate indifference to the rights of persons whom Defendant City of Ava's personnel come into contact with, including Mr. Aumick.

123. Upon information and belief, Defendant City of Ava appointed officers and/or

personnel, who were not licensed and/or adequately trained professionals, to screen the needs, including medical needs of Mr. Aumick.

124.     Upon information and belief, Defendant Berkshire was inadequately trained and supervised by Defendant City of Ava.

125.     On April 4, 2020, Mr. Aumick was under the care, custody, and control of Defendant Berkshire, during which time, and at all times, he was in serious need of care, including medical care, a fact which Defendant City of Ava, through its agents and employees knew, but failed to provide proper medical care to maintain his health.

126.     Defendant City of Ava implicitly or explicitly adopted and implemented policies, customs, or practices that included, among other things, allowing officers and/or personnel with no or inadequate training to use deadly force, assess the conditions, including the medical conditions and/or withhold medical treatment and/or deny medical treatment to individuals with serious medical needs, including Mr. Aumick, which policies, customs, or practices reflected a deliberate indifference to Mr. Aumick.

127.     The failure of Defendant City of Ava to implement policies and procedures amounts to deliberate indifference to Mr. Aumick.

128.     At the time of the above-described events, it was the custom or policy of Defendant City of Ava to inadequately supervise and train its officers and/or personnel, thereby evidencing a deliberate indifference to Mr. Aumick's constitutional rights.

129.     The need for training on the rights of detainees is obvious, and the lack of training was so inadequate that it was likely to result in violating the rights of inmates, including Mr. Aumick.

130.     Defendant City of Ava's failure to supervise officers and/or personnel constituted a tacit authorization of the offensive acts.

131.     In committing the acts complained of herein, Defendant City of Ava acted under color of State law to show deliberate indifference to a serious medical need and to the substantial risk of death by Mr. Aumick after having actual knowledge of such need for care, including medical care, and in deprivation of Mr. Aumick's rights under the Due Process Clause of the 14th Amendment of the United States Constitution.

132.     As a direct and proximate result of the violation of Mr. Aumick's constitutional rights by Defendant City of Ava, Mr. Aumick suffered general and special damages as alleged in the Complaint and is herein entitled to relief under 42. U.S.C. §1983.

133.     The conduct of the Defendant City of Ava was willful, malicious, oppressive, and reckless and are of such nature that punitive damages should be imposed in the amount commiserate with the wrongful acts alleged herein.

        WHEREFORE, Plaintiff prays this court:

A.             Enter judgment in favor of Plaintiff and against Defendant City of Ava;

B.             Award Plaintiff compensatory damages and damages for aggravating circumstances against Defendant City of Ava;

C.             Award Plaintiff punitive damages;

D.             Award Plaintiff reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable provisions of law; and

E.             Allow such other relief as the Court deems just and proper.

## COUNT 3:
## Wrongful Death
## Against Defendants Berkshire,
## Cox and Wood

134.     Plaintiff hereby incorporates by reference the allegations made in each preceding paragraph as if each were set forth herein.

135.     Defendants Berkshire, Cox and Wood owed a duty to ensure the safety of detainees,

17

specifically Mr. Aumick. This duty included the duty to provide proper medical care to maintain his health.

136.    Defendants Berkshire, Cox and Wood breached their duty of care in failing to provide appropriate, properly adequate care, including medical care; in failing to properly assess and examine Mr. Aumick; and in failing to properly monitor Mr. Aumick.

137.    Defendants Berkshire, Cox and Wood owed a duty to ensure the safety of arrestees/detainees, specifically Mr. Aumick. This duty included the duty to provide proper medical care to maintain Mr. Aumick's health. Defendants Cox and Wood owed a duty to arrestees/detainees, specifically Mr. Aumick, to exercise that degree of skill and learning ordinarily exercised under the same or similar circumstances by members of their respective professions.

138.    As a direct and proximate result of the aforementioned negligence and breach of care by the Defendants Berkshire, Cox and Wood, Mr. Aumick was injured, caused to suffer conscious pain, suffering, and loss of life, and Plaintiff sustained damage, as more fully set forth herein.

139.    That by reason of the foregoing, Plaintiff is entitled to recover fair and reasonable damages against the Defendants Berkshire, Cox and Wood as provided for in § 537.080 R.S.Mo. for the wrongful injuries to and the wrongful death of Mr. Aumick, including special damages for his funeral and burial.

140.    From the beginning of his detention hereinabove until his untimely death, Mr. Aumick suffered physical and mental pain which is an item of damage to be considered and awarded.

141.    Defendants Berkshire, Cox and Wood's conduct in this case, as set forth in the Complaint constitutes aggravating circumstances within the meaning of the laws of the

State of Missouri. Furthermore, this conduct was undertaken with knowledge that such conduct produced a high degree of probability of injury to Mr. Aumick, or others similarly situated, and was done with such reckless or callous indifference and conscious disregard for the life and safety of others so that public policy requires punishment through the form of aggravating circumstances.

WHEREFORE, Plaintiff prays for judgment against Defendants Berkshire, Cox and Wood, and each of them jointly and severally, for damages, including prejudgment interest, in a fair and reasonable sum in excess of $75,000.00, their costs incurred herein, punitive damages, and for such other relief as is deemed appropriate by the Court.

## INJURIES AND DAMAGES

147.    Plaintiff hereby incorporates by reference the allegations made in each preceding paragraph as if each were set forth herein.

148.    As a direct and proximate result of the negligence set forth above, decedent Mr. Aumick suffered great personal injury, pain and suffering and mental anguish prior to his death. As a direct and proximate result of the Defendants' deliberate indifference to Plaintiffs' decedent, Mr. Aumick, he was forced to suffer the following severe, permanent and devastating injuries: Mr. Aumick was caused to suffer a deterioration of his condition, severe anxiety and distress, severe mental anguish, and all said conditions led to high levels of anxiety and anguish, and these conditions caused him great physical pain and mental suffering prior to his death. Defendants' deliberate indifference to Mr. Aumick worsened and exacerbated decedent's condition, causing him great physical pain and mental anguish.

149.    As a direct and proximate result of the deliberate indifference to Plaintiff's decedent Mr. Aumick, Plaintiff has been deprived of decedent's valuable services, companionship, comfort, consortium, instruction, guidance, counsel, training, support, love, and affection.

Additionally, decedent suffered great physical pain and mental anguish through the time period of the Defendants' deliberate indifference to his serious medical needs.

150.    As a direct and proximate result of the Defendants' deliberate indifference to decedent Mr. Aumick, the decedent suffered the loss of life, and with it the loss of future income and enjoyment of life.

151.    Plaintiff is entitled to recover punitive damages from the Defendants for their intentional, willful, and malicious acts and/or omissions which constituted a deliberate indifference to Mr. Aumick in violation of his civil rights pursuant to 42 U.S.C. § 1983 by Defendants.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury on all of the above issues, costs herein incurred, fees where appropriate, and for such relief as is deemed appropriate by the Court.

Respectfully submitted,

LAUREN ALLEN, LLC

/s/ *Lauren Perkins Allen*
Lauren Perkins Allen
Missouri Bar #49845
4717 Grand Ave., Ste. 130
Kansas City, Missouri 64108
T:  816.877.8120
F:  816.817.1120
Email:  lpa@laurenallenllc.com

**ATTORNEY FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was filed via the Court's electronic filing system on this 25th day of July 2021, which sent notification to counsel of record.

*/s/ Lauren Perkins Allen*
*Attorney for Plaintiff*