To: Lauren Allen

RE: Aumick v. Ava

Dear Ms. Allen:

I will offer expert testimony about the actions of Ava Officers, and Cox Medical personnel to the degree that my expertise allows regarding their interaction with Shane Aumick on April 4th 2020.

## Foundation of Expertise

I am a law enforcement executive and a former command level military officer with over 50 years' experience in managing violence, military law enforcement, security personnel and police and sheriff's office personnel. My specific skills and experience are contained in my attached CV. I am a Missouri Department of Public Safety Peace Officers Standards and Training (POST) subject matter expert in defensive tactics and police practice and procedure. I am the former Under Sheriff of Jackson County Missouri and supervised 115 Deputies and the Patrol Division, Sheriff's Office Emergency Response Team (ERT), Special Operations Response Team (SORT) and Traffic unit. I directly supervised all search warrant and arrest warrant operations within the Sheriff's office for a ten-year period. I have served as a consultant and expert witness since 1993 and have worked approximately 135 cases in that time.

My opinions are based on over 30 years of professional experience in the field of law enforcement and corrections. I have consulting experience in security training with the Kansas City Police Department; Omaha Police Department; Dallas Police Department; Ft. Worth, Texas, Police Department; Los Angeles Police Department; the U.S. Border Patrol; and several organizations, businesses, and private security companies. I have served as the Under Sheriff (Colonel) for the Jackson County, Missouri, Sheriff's Office, and a Police Officer/Sergeant/Supervisor in the Kansas City Police Department, where I served on the Internal Affairs Review Board for Use of Force and authored the Department's Use of Force Continuum and Model. During the assignment to the Regional Police Academy, I was the principal subject matter expert and principal trainer for defensive tactics and firearms for the Kansas City Missouri Police Department.

## Background Summary

On April 4th 2020 at about 0614:11 hours, Officer Berkshire was dispatched to the Aumick residence on a reported domestic disturbance. party armed with a knife. The report indicates the officer arrived at 06:15:02, 52 seconds later. Ofc. Berkshire reports that upon arrival he



EXHIBIT B

encountered Meri Aumick and her Husband Houston Thomas across the street from the residence behind a car. Meri Aumick was bleeding from dog bites and "knife wounds."

Upon speaking to Meri Aumick and Houston Thomas, Berkshire reports that Shane Aumick burst out of the house, descended the stairs, and threatened him with a knife. Berkshire reports that he drew his weapon, directed his light towards Shane and ordered him to drop the knife. Berkshire states that if Shane does not drop the knife he may be shot. Berkshire calls for an ambulance to be staged, requests Douglas County Sheriff's backup and that a supervisor be notified. He states that he holsters his weapon and disarms Shane and throws the knife on the ground but that Shane escapes his grasp and retreats into the house. Berkshire then reports he approached the house with his pistol drawn with light on and his flashlight in his left hand, commands Shane to turn around, handcuffs him and sits him on the porch while Berkshire clears the residence.

After checking Shane's family for injuries Shane again becomes erratic, and is placed face down in a prone, hands cuffed in the rea position with Shane's legs crossed and pressed against his buttocks to lock him in position. Paramedic Steve Wood joins in the restraint and after some time Shane "went slack." Berkshire states that he noticed immediately and began life saving measure turning the remainder of the medical procedure over to paramedics. After extended medical efforts, Shane Aumick was declared dead at the scene. Cause of death was reported by the medical examiner as Excited Delirium. No Death Investigation is conducted by any agency.

Observations:

There is no body cam video of any of the events on the first page of the narrative of Berkshire in the Ava police report and certain events listed on that page do not sync with the existing body cam. Berkshire states that he initially approached Shane as Shane burst from the residence and threatened to cut him with a knife. Berkshire says he drew his weapon and ordered Shane to disarm but Shane does not comply. Further Berkshire states that he decided to re-holster his firearm and disarm Shane by hand (with one hand) as he maintained his hand torch in his left hand. This is implausible. Meri Aumick states that Shane threw the knife on the ground and retreated into the residence before Berkshire's arrival. This is supported by the conversation with Berkshire and Thomas at the car once Shane is handcuffed and seated on the porch (body cam 1 6:17:24). Thomas describes Shane's actions prior to Berkshire's arrival and Berkshire responds, "he had a knife?" Berkshire would have known that if he had disarmed Shane of a knife before that conversation. Further proper procedure would not have allowed Berkshire, had he known a knife was on the ground near Shane, to remain there while he talked to the parents. At 6:20:42 Berkshire bends forward to Shane's right front and he appears to pick up the knife and place it on the porch rail. Further the video indicates that ambulance, Douglas County backup and the supervisor were requested after Shane was handcuffed, not before as the report indicates.

Restraint of Shane Aumick

Shane Aumick is handcuffed on video at 6:14:57 and placed in a seated position on the porch. Shane is agitated and moving around so he is placed in a prone position at about 6:21:04 with his

legs crossed, and pressed against his buttocks. This is a classic "Hogtie" position of subject control by prone restraint. On video Shane appears to go still at 6:21:50 and silent at 6:21:54. Shane remains in this position with Berkshire on his upper body and Wood on his legs until a final outburst at 6:26:40 and is then still and silent by 6:26:54. Berkshire engages in a distracting conversation with Houston Thomas and at 6:30:03 apparently responding to a question from Steve Wood, appears to acknowledge the fact that Shane is unresponsive. Efforts to remove cuffs are delayed and they are not removed until 6:36:27. The time from last outburst to acknowledgement of condition is approximately 3 minutes. Shane has been prone in restraint since 6:21:04 or about nine minutes. He has been unresponsive for about three minutes.

Prone restraint concern entered the law enforcement training community in earnest about 1992. Initially Excited Delirium was a condition most closely related to drug use, application of a Taser to certain subjects and unexplained death in arrested parties. While this is a term of art used in Ava's policies, police officers were trained to recognize "Excited Delirium" as being related to:

- Obesity.
- Alcohol use.
- Drug use.
- and/or enlarged heart (NLETC article 1995, page 2)

Officers were trained in:

### Advisory Guidelines for Care of Subdued Subjects
To help ensure subject safety and minimize the risk of sudden in-custody death, officers should learn to recognize factors contributing to positional asphyxia. Where possible, **avoid the use of maximally prone restraint techniques (e.g., hogtying). To help minimize the potential for in-custody injury or death,** officers should: Follow existing training and policy guidelines for situations involving physical restraint of subjects. (NLETC article 1995 page 2)

### Officer Subduing a Violent Suspect and How It Can Interfere With Breathing
**As soon as the suspect is handcuffed, get him off his stomach.**
**Ask the subject if he has used drugs recently** or suffers from any cardiac or respiratory diseases or conditions such as asthma, bronchitis, or emphysema.,
Monitor subject carefully and obtain medical treatment if needed.
**Be trained to recognize breathing difficulties or loss of consciousness**
and immediately transport the individual to the emergency room, or call for an emergency medical team (EMT) unit if such signs are observed.
Obtain medical care upon subject's request. (NLETC article 1995 page 2)

In Foo's article he states,
"In the context of an arrest, the subject is usually facedown (or 'prone') and is unable to breath easily in that position. It is exacerbated when there is a heavy weight (like several officers who are pressing) on the subjects back. It can also happen when supine (face up) with weight on their stomach area – especially if the subject has a large (beer belly) abdomen. This scenario can

happen easily with arresting officers trying to control a subject on the ground especially if more officers or people come and add 'weight' to gain control of the arrested subject." (Doc 3)

This prohibition and caution was taught by the Regional Police Academy in 1993 and most certainly was a standard practice in 2020.

The time Shane Aumick was restrained in a compromising prone position was excessive and may have contributed to his death.

Ava's policies are problematic. Clearly, they are purloined from some other larger agency and not even mildly adopted for Ava's use. This would not altogether be a fatal flaw if the policies had been followed, such as a response to resistance report indicating death in custody, the drawing of a weapon for display and so on. In some cases, where smaller department's such as Ava adopt other department's policies, but fail to properly incorporate them in their procedures. The policies become little more than fluff.

Moreover, had even a cursory review of the video been compared with the report, the inconsistencies would have been apparent.

I believe Positional Asphyxia may be the contributing factor in this case but will defer any further comment on that to medical experts. From a training perspective there are several key indicators.

1. The Taser (which Berkshire was equipped with) was the proper tool with which to immobilize Aumick. Single officer Taser operations are dangerous and should be covered by lethal force but in a small agency like Ava that may not be practical.
2. Tactical prudence should have summoned a backup before contact with Aumick was made. There was no need to rush it as Aumick was only a danger to himself upon arrival of police.
3. There was no need to place Aumick in a prone restraint. In his condition and while handcuffed, he presented little danger to the officer or others. Multiple methods could have stabilized Shane in a seated, secured position till assistance arrived.
4. Delay in providing medical care and use of a paramedic in a tactic with which he was not trained diverted the medic from his principal task of patient care.

· Opinions

1. The use of the prone restraint for nearly nine minutes should have been known to Officer Berkshire to be a dangerous condition. This standard of care has been taught in Missouri Police Academies since at least 1993.
2. Failure to recognize Mr. Aumick's loss of blood as a principal concern violates the standard of care for a police first responder. First aid to control bleeding should have started incident to arrest until arrival of EMT personnel.
3. The incidents on page one of the Aumick police report prepared by Officer Berkshire do not appear on body camera footage and are not reported by Meri Aumick, the eyewitness.

Conversely, she states Shane dropped the weapon and retreated prior to police arrival. I see no reason to embellish the actions of the officer other than self-aggrandizement. If the facts are purposely false, then the report is a false report.
4. Failure to initiate a full case of the death investigation falls below the police standard of care and was counter to Ava's policies.
5. Failure to complete a report of use of force /response to resistance is outside the standard of care for police agencies in Missouri and was counter to the Ava polices.
6. The Ava policies were not prepared by the City and Police Department of Ava and were poorly interpreted by Ava police personnel on this case as Chief Johnson's testimony demonstrates the policies were disregarded.

signed
Hugh Mills

I have completed my review of the documents, videos, and audio clips you have forwarded to me in the above-referenced matter, including:

115839KBERKSHIRE10222021FULL.pdf

115839RJOHNSON10222021FULL.pdf

Aumick Police Report.pdf

aumickmeril11921_full.pdf

Body Camera Footage 1.mp4

Body Camera Footage 2.mp4

Exhibit 1-Berkshire Time Sheet.pdf

Exhibit 2-Berkshire Application for Employment.pdf

Exhibit 3-Berkshire Training Certs.pdf

Exhibit 4-Ava Policy Code of Ethics.pdf

Exhibit 5-Ava Policy Mission Oath of Office.pdf

Exhibit 6-Ava Policy Video Equipment.pdf

Exhibit 7-Ava Police Report.pdf

Exhibit 8-Ava Policy Preservation of Evidence.pdf

Exhibit 9-Ava Policy Taser.pdf

Exhibit 10-Ava Policy Response to Resistance.pdf

Exhibit 11-Ava Policy Reporting Response to Resistance.pdf

Exhibit 12-Butterworth Letter May 2020.pdf

Exhibit 13-Ava General Order I Organization of Manual.pdf

Exhibit 14-Ava General Order XXVII General Rules and Regulations.pdf

Exhibit 15-Ava SOG Effective Date.pdf

Exhibit 16-Ava PD-Department Manual Sign Sheet.pdf

Exhibit 17-Ava PD General Order V-Response to Resistance.pdf

Exhibit 18-Wood Certification Cards.pdf

Exhibit 19-CoxHealth-Wood Report.pdf

Exhibit 20-Bloody Front Porch & Step.pdf

Exhibit 21-Front Door.pdf

Exhibit 23-Aumick Autopsy Photo-Left Leg.pdf

Exhibit 24-Aumick Autopsy Photo-Left Hand.pdf

Exhibit 25-Aumick Autopsy Photo-Right Hand.pdf

Exhibit 26-Aumick Autopsy Photo-Left Shoulder Side Body .pdf

Exhibit 27-Aumick Autopsy Photo-Full Face.pdf

Exhibit 28-Aumick Autopsy Photo-Right Face.pdf

Exhibit 29-Aumick Autopsy Photo-Left Face.pdf

Medical Examiner Report Aumick, Shane001.pdf

Toxicology Report Aumick, Shane001.pdf